WILLIAM C. HARDING AND OTHERS *vs.* THE MILL R ) \ I I
WOOLEN MANUFACTURING COMPANY.

A manufacturing company entered into an agreement with *H,* by which they were
for three years to consign all their manufactured goods to him and he was to
lend them his credit to a specified amount by accepting their drafts, which as
they matured were to be paid with the avails of new acceptances, the whole to
be continued for three years, and a mortgage to be given for his security. Be-
fore the end of the first year the company failed and went into insolvency and
wholly ceased business. On a bill brought by *H,* for the foreclosure of the
mortgage given by the company, it was held,—1. That the insolvency of the
company and its abandonment of business was equivalent to an abandonment
of performance on their part. 2. That though the trustee in insolvency would
have power under an order of the court of probate to work up the stock on
hand, he would have no power to go on with the performance of the contract.
3. That the trustee took the property subject to all the obligations imposed by
the mortgage. 4. That the mortgage could be foreclosed before the expiration
of the three years.

BILL for the foreclosure of a mortgage. The mortgage was
given by the respondents to the petitioners, who were part-
ners under the name of Harding Brothers & Company, to
secure the following contract:

"The said Mill River Woolen Manufacturing Co. agrees to
consign to said Harding Brothers & Co., for sale on commis-
sion, their stock of manufactured goods now on hand, and
also the entire production of the manufacturing establish-
ment now carried on by them at said Stamford, from time to
time, as their goods are manufactured and ready for market,
for the period of three years from the date hereof. And in
consideration thereof, the said Harding Brothers & Co. agree
to receive said goods, so consigned to them, at their place of
business in New York, for sale on commission, and to use
their best efforts to keep the goods so consigned sold up at
the market price thereof, and to make the usual advance on
all goods so consigned, which is three-fourths of the market
value of the same; and in addition to such advance to allow
sa d Woolen Manufacturing Company a line of credit not

exceeding the sum of $75,000, or to extend beyond said period of three years, which credit is to be used as follows: the said Woolen Manufacturing Co. may from time to time make their drafts on said Harding Brothers & Co., at four and six months sight, which drafts, if negotiated in the market, shall be negotiated at the expense of said Woolen Manufacturing Co., and as the drafts so drawn mature, said Woolen Manufacturing Co. shall provide funds for the payment of the same by redrawing upon said Harding Brothers & Co., that the drafts thus made may be negotiated or discounted at the expense of said Woolen Manufacturing Co. for the purpose of thus providing funds to pay maturing drafts; and this may be done within the limits before mentioned as to amount and time, that is to say, the amount of acceptances of said Harding Brothers & Co. for said Woolen Manufacturing Co. outstanding at any one time, shall not exceed the sum of $75,000, or be made but within the said period of three years from the date hereof.

" It is agreed that said Harding Brothers & Co. shall be allowed a commission on sales of seven per cent., which percentage includes usual charges, commission and guaranty, but does not include interest.     *     *     *

" It is further agreed that said Woolen Manufacturing Co., in order to secure the performance of the foregoing agreement on their part, shall execute and deliver to said Harding Brothers & Co. a mortgage of the entire mill property, both real and personal, belonging to them, but said company expressly reserve the right to relieve their property from the mortgage and incumbrance at any time within said three years, as well as after that time, by adjusting their account with said Harding Brothers & Co., and paying to them whatever may be due.     *     *     *

" This agreement shall take effect and bear date as of the 22d day of June, 1866, on which day the same was in fact made, and from which date the same has been acted upon by the parties hereto. It being understood and agreed by the parties hereto, that whenever, during said term of three years, the said Mill River Woolen Manufacturing Co. shall

pay and liquidate the entire amount of credit furnished by Harding Brothers & Co., pursuant to the foregoing agreement, and any other indebtedness to them, said Woolen Manufacturing Co. may, at their pleasure, discontinue their consignments to said Harding Brothers & Co. and close the account."

The petition alleged that the agreement remained in force, and was acted upon by the parties thereto, and in all respects complied with on the part of the petitioners, until on or about the 24th day of May, 1867, when the company being insolvent made an assignment in insolvency to Charles Gaylord, who accepted the trust and was duly confirmed as such trustee by the probate court for the district of Stamford, and gave bonds according to law for the faithful discharge of his duties, and thereupon became vested with the title to all the estate of the company, in trust for the benefit of its creditors. That by reason of the insolvency of the company, and their assignment in insolvency, the company became and were wholly unable to perform the agreement on their part, and that the trustee could not perform the same, and that since the insolvency of the company they had not done any of the things on their part required to be done by the terms of the agreement, and had ceased to carry on the business of manufacturing; and that although the petitioners always had, so far as the conduct and situation of the company would allow or enable them to do, performed all things specified in the agreement to be performed on their part, yet by reason of the premises and the insolvency and assignment of the company the agreement had terminated and was no longer in force.

The petition also alleged that the petitioners had accepted drafts of the company in accordance with the agreement to the amount of $75,000, and had been compelled to pay them. The petition was dated July 29, 1867. The trustee in insolvency was made a respondent.

The superior court, (*Granger, J.,*) found the allegations of the petition to be true and passed a decree of foreclosure. The respondents brought the record before this court by mo-

Harding *v.* Mill River Woolen Manufacturing Co.

tion in error. The points made are sufficiently stated in the opinion.

*Child,* for the plaintiffs in error.

*W. W. McFarland,* for the defendants in error.

McCurdy, J. The respondents claim that the decree of the superior court is erroneous, upon the ground, in the first place, that their contract to manufacture and deliver goods to the petitioners was executory and prospective, and that they had the full three years in which to perform it. It seems to us that this is a palpable mistake of the tenor and effect of the agreement. It was indeed to exist for three years, but it was to go into effect immediately, and to be kept in a state of continuous performance during that time.

The respondents say, in the next place, that it does not appear but that either the company or their assignee will yet perform their covenants. But it is found that the company have utterly failed, gone into insolvency, made an assignment of their property, and ceased doing business, and that of course it would be impossible for them to keep their engagement. With respect to the assignee, although he might be authorized by the court of probate, on his application, to work up the stock on hand, he would have no power to carry on the manufacturing business with all its expenses and risks on behalf of the estate assigned. The law is precise in defining his duties. Besides, he has obtained no such authority, and refuses even to attempt to perform the agreement, averring that it is terminated.

Finally, it is claimed that the assignee takes the property freed from the obligations imposed by the mortgage. This pretense would hardly justify a serious argument for the purpose of reputation.

There is nothing erroneous in the judgment.

In this opinion the other judges concurred.