WILLIAM O. ALLISON, Respondent, *v.* HARVEY N. LOOMIS
*et al.*, Impleaded, etc., Appellants.

*Supreme Court, Fourth Department, General Term, February* 15, 1890.

*Mortgage. Foreclosure.*—Where a deed is given as security for a loan and
one half of the loss of a joint enterprise, and a subsequent unsigned
agreement is made, on a sufficient consideration giving the grantor
the right to redeem at any time within five years from its date, the
contract is valid, and an action prior to the expiration of such time is
premature, though the enterprise was, by mutual consent, previously
abandoned.

Appeal by the defendants, Harvey N. Loomis and Florence
Y. Loomis, from a judgment of foreclosure entered in Onon-
daga county, on the 30th September, 1889, upon the report
of a referee.

On the 22d November, 1886, the plaintiff and the defend-
ant, Harvey N. Loomis, entered into an agreement in writ-
ing under seal, by which they agreed to organize a corpora-
tion, under the laws of the state of New Jersey, for the pur-
pose of quarrying, crushing and dealing in stone at Linwood,
in the township of Ridgefield, Bergen county, New Jersey,
the corporation to be organized for the period of five years,
and the capital stock to be $7,500 divided into 300 shares of
$25 each. Allison agreed to take and pay for all the stock,
but for the purpose of incorporation one share was to be held
by Loomis, and one by another party. Allison agreed to
lease to the company, for its purposes, certain premises owned
by him, upon which was a stone quarry, for two years, at
$1,200 a year, with contract that at or before the end of the
two years he would sell and convey to the company, and the
company would purchase the land for $10,000 and interest,
less such sums as might be paid for rent, the terms of this

purchase to be one-half cash, and the balance in two years. Allison also agreed to loan to the company such money as it should require in the business, over and above its capital, to the amount of $12,500. Loomis was to be the president and treasurer, and to have the general management, for which he was to receive twenty per cent. of the net profits, and no other compensation. Dividends were to be made quarterly, beginning June 1, 1887, if earned. Allison also agreed to advance to Loomis $1,300 in thirteen weekly instalments, to be repaid with interest out of his twenty per cent. of the profits, and Loomis agreed " that in case the enterprise proves unprofitable (unless a change is made in the management by Allison so that Allison sustains a loss on his advance or any part thereof, or on his stock or any part thereof, Loomis will bear half said loss ; and for the purpose of securing Allison his loan of $1,300, and one-half of said loss, said Loomis will give him a deed of conveyance of his five pieces of real estate in Manlius and Syracuse, New York. Loomis to have the use of said real estate, free of charge, during the time said Allison holds the same as security as herein provided." When Allison was repaid the $1,300, and his advances to the company and interest, including his $7,500 investment in stock, he agreed to transfer to Loomis 180 shares of the stock, and reconvey to him the real estate in Manlius and Syracuse.

The corporation was formed, and stock taken and paid for by Allison as agreed, and Loomis conveyed to Allison the five pieces of real estate in Manlius and Syracuse. The corporation adopted the agreement between Allison and Loomis, and Loomis became its president, treasurer and manager. It took possession of the premises of the plaintiff described in the contract, and under the management of Loomis proceeded to the construction of its plant. Allison advanced to Loomis the $1,300, and also advanced to the corporation the $12,500 mentioned in the contract. Loomis continued to be manager until about June 1, 1887. In the latter part of May he re-

ported to Allison that he had expended on the enterprise the entire amount advanced by Allison, and had incurred in addition an indebtedness of about $6,000 then due and unpaid, and that in order to complete the plant and pay the debts about $8,000 more was needed. Thereupon negotiations were had between the parties for further advances to be made by Allison in the enterprise, and he, on or about June 4, 1887, advanced the further sum of $12,000. This was made pursuant to an unsigned written agreement made between the parties about June 1, 1887, under which, as the referee finds, " the parties acted from that date as well as under the contract of November 22, 1886."

In this agreement it was, among other things, provided that Loomis should resign as treasurer but continue as manager ; that Allison should be elected treasurer and manage the finances, for which he was to receive twenty per cent. of the net profits, and this to continue until all his advances were paid ; that Allison should advance as much more as was necessary to pay the debts and complete the plant up to about $8,000, and in case the enterprise was profitable make further advances for the running of the business, making in all, excluding the payment for stock, the sum of $32,500 ; that dividends should be made quarterly, beginning December 1, 1887, if earned, and after Allison was paid his advances and interest, including what he paid for the stock, he should transfer to Loomis one hundred and twenty shares of the stock and reconvey the real estate. The clause of the agreement as to this real estate was as follows :

" Said Loomis agrees that. in case the enterprise undertaken by said company proves unprofitable, so that Allison sustains a loss on the advance heretofore made by him to the company or on his stock or any part thereof, said Loomis will bear half said loss. And for the purpose of securing Allison said loan of $1,300 to said Loomis, and one-half his loss on advances heretofore and hereafter made to said company, and on his stock, said Loomis has given him a deed of

conveyance of his five pieces of real estate in Manlius and Syracuse, New York, Loomis to have the use of said real estate free of charge during the time said Allison holds the same as security as herein provided ; provided that, if at the end of five years from the date hereof the profits have been insufficient to pay said Allison's advances with interest, then said Allison shall be entitled to full possession of said lands and real estate, and the right of said Loomis to a reconveyance thereof shall cease unless said Loomis shall, before that time, tender said Allison one-half of said loss, and interest thereon, and demand such reconveyance."

Under this arrangement the business was continued to November, 1887, when Loomis reported to Allison that it was unprofitable and could not be made successful, and thereupon, as the referee finds, " the enterprise was abandoned and the corporation itself had entirely discontinued operations and has performed no functions, either in the furtherance of said enterprise or otherwise, and all with the knowledge and consent of both parties to this action."

In January, 1888, a creditor of the corporation commenced an action against it in New Jersey and recovered judgment, and on or about the 22d March, 1888, all the property of the corporation was levied upon and sold under execution upon this judgment, and was bid in by one Dutton. The referee finds that this creditor's action was brought at the instigation of the plaintiff, and that the property was bid in by Dutton by the authority of plaintiff, who continues to have an interest in it.

The present action was commenced in April, 1888, to ascertain the amount due the plaintiff from said Loomis, for security of which the conveyances were made from Loomis to plaintiff, and foreclose, as a mortagage, those conveyances, sell the property and apply the proceeds on the debt.

In ascertaining the amount of the debt, the referee charged the plaintiff with the value of the property sold on the judgment, being the sum of $8,000, and the balance due the plaint-

iff was found at $15,179.50, for payment of which the property was directed to be sold, except one piece, which had been theretofore disposed of by agreement of the parties.

*Louis Marshall*, for appellants.

*A. L. Sessions*, for respondent.

MERWIN, J.—The main question on this appeal relates to the validity and effect of that portion of the agreement of June, 1887, which specifies the object and terms upon which the real estate in question was conveyed by Loomis to the plaintiff. That agreement, as well as the original one of November, 1886, provides for the payment by Loomis to Allison of the $1,300 loan and of one-half of any loss that Allison shall sustain on his advances or stock in case the enterprise proves unprofitable. The property in question is conveyed by Loomis to Allison for the purpose of securing the loan and such half of the loss. Notwithstanding the conveyance Loomis is to have the use of the property free of charge during the time that Allison holds it as security. So far, both contracts are alike. Then comes, in the latter contract, a new provision under which Loomis claims he has the right to redeem at any time within five years from its date. If that be so, and the contract is valid, then this action cannot be now maintained. The claim of the plaintiff, in substance, is that the contract itself is not valid, and the provision for security to the plaintiff was intended to be absolute and enforceable at the final determination of the enterprise, and that the fact that in the fall of 1887 the enterprise was by mutual consent abandoned made the security then complete and due.

We must, I think, assume that, as far as the question at issue here is concerned, the contract though unsigned was valid. Homer *v.* Guardian Mutual Life Ins. Co., 67 N. Y. 481. It was supported by a sufficient consideration. Under it there

was a new relation between the parties. Loomis resigned as treasurer and the plaintiff was elected in his place and became manager of the finances of the company, with the right to receive as compensation a portion of the profits. The partial control, so given up by the defendant and received by the plaintiff, was a sufficient consideration for the extension of time, if there was one. The parties acted under the agreement, as changed, from that time forward. The new arrangement was proved and put in evidence by the plaintiff.

Was there an extension of time ? The first contract left the time of payment indefinite except as it might be fixed by the time at which the loss, if any, should be ascertained. The condition was "in case the enterprise proves unprofitable." This event might occur before the expiration of the five years, as the funds were limited. Very likely the expectation was that the enterprise would continue for the term of the corporation. It was not a certainty, as the result showed. In the new contract the proviso was that if at the end of five years the profits were insufficient to pay Allison, then the right of Loomis to a reconveyance should cease, unless before that time he should pay his share of the loss. This gave Loomis five years in which to ascertain what the loss, if any, was. This, in substance, said the deed shall be absolute unless within five years Loomis should pay. Clearly the intention was to give Loomis five years in which to perform his contract and save his property. The expression is " unless said Loomis shall before that time tender, etc." This contemplated the contingency that the loss might be ascertained before the end of the five years. It did not provide that the loss should be paid as soon as ascertained. The circumstance, therefore, that the business was, by mutual consent, abandoned before the end of the five years, would not make the mortgage immediately due. It would indicate that both parties concluded to consider the enterprise a failure ; it would not shorten the time within which Loomis must pay his share of the loss and exercise his right of redemption.

The case of Harding *v.* Mill River Manufacturing Co., 34 Conn. 458, does not aid the plaintiff. There the security sought to be reached was furnished by the company itself. Here, assuming the corporation was abandoned, it does not follow that the provisions of an agreement between the individuals interested in the corporation, in regard to the adjustment of their rights as between themselves, were also abandoned.

It must, I think, be held that Loomis had five years within which to redeem, and that no waiver of this right was shown. It follows that the judgment must be reversed.

Judgment reversed upon the exceptions, and new trial ordered before another referee, costs to abide the event.

HARDIN, P. J., and MARTIN, J., concur.