## THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs*. THE CHESTER RIVER STEAMBOAT CO.

*Time of Assessment for Taxation of Shares of Stock of Domestic Corporations—Shares Owned by Non-Residents—When Taxes are in Arrear.*

Under Code, Art. 81, sec. 159, when shares of stock of a Maryland corporation are owned by a non-resident the shares are assessable for taxation in the city or county where the principal office of the corporation is located, and the corporation is required to pay the tax and charge it to the account of the non-resident.

Code, Art. 81, sec. 150, directs that every domestic corporation shall, by March 15th of each year, make a report to the State Tax Commissioner of the number, value, etc., of the shares of stock of the corporation, as of the first January of each year, and that the Commissioner shall by May 15th in each year assess for taxation said shares as of January 1st next preceding. Section 156 provides that an officer of every corporation shall annually, on or before March 1st, furnish to the County Commissioners of the county or to the Appeal Tax Court of Baltimore City a list of the stockholders residing therein and the number of shares held by each. Other sections provide for the valuation of the shares of stock by the State Tax Commissioner and for his certificate thereof to the taxing officers of the counties and cities of the State. *Held*, that under these provisions shares of stock in domestic corporations are assessed for taxation, both State and municipal, to the persons owning the same on January 1st in each year for that year, and that the said reports as to the shares of stock and their ownership required to be made by the officers of the corporation must relate to such ownership on January 1st.

Shares of stock of a corporation having its principal office in the city of

Baltimore were owned on January 1st, 1905, by non-residents. On February 1st, 1905, these shares were transferred to a domestic corporation having its principal office in Queen Anne's County. *Held*, that these shares having been owned on January 1st, 1905, by non-residents are taxable for that year in the city of Baltimore.

An action against a corporation to recover taxes on shares of stock owned by non-residents cannot be maintained until the expiration of the year for which the levy is made, since Code, Art. 81, sec. 70, provides that taxes shall be considered in arrear on the first of January next succeeding the date of their levy.

Appeal from Baltimore City Court (STOCKBRIDGE, J.)

The defendant's prayer was that inasmuch as the agreed statement of facts shows that at the time the defendant was required to, and did make its reports under Code, Art. 81, secs. 150 and 156; that at the time the State Tax Commissioner assessed the value of each share of the capital stock of the defendant company; that at the time the State Tax Commissioner reported said valuation to the Appeal Tax Court; and that at the time the Appeal Tax Court valued said stock to Scott & Company, said stock was owned by a Maryland corporation with its principal office located in Queen Anne's County, the verdict of the Court sitting as a jury must be for the defendant. (*Granted.*)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, SCHMUCKER, JONES and BURKE, JJ.

*Albert C. Ritchie* (with whom was *W. Cabell Bruce* on the brief), for the appellant.

*Ralph Robinson* (with whom was *Bond & Duffy* on the brief), for the appellee.

JONES, J., delivered the opinion of the Court.

The question to be determined in this case is presented in one exception which was taken to the ruling of the Court below upon the prayers submitted by the respective parties. The facts upon which these prayers were based are set out in

an agreed statement of facts and are in substance as follows. The appellee is a corporation incorporated under the laws of this State having its principal office for the transaction of its business in the city of Baltimore of this State. Its capital stock on the first of January, 1905, consisted of 1,000 shares of the par value of $100 each, all of which, on said date, were held and owned by Henry Scott & Company, who were non-residents of this State and residents of the State of Delaware. On February 1st, 1905, all of these shares of stock were transferred by Henry Scott & Company to the Maryland, Delaware and Virginia Railway Company, a corporation incorporated under the laws of Maryland and Delaware, having its principal office for the transaction of its business in Queen Anne's County, of this State; and from the time of said transfer all of said shares of stock have been held and owned by, and have stood in the name of, the said last-named corporation on the books of the appellee. On the 28th of February, 1905, the appellee reported to the County Commissioners of Queen Anne's County that the whole of the capitalstock of the company, consisting of 1,000 shares of the par value of $100 per share, was owned by the Maryland, Delaware and Virginia Railway Company. On March 14th, 1905, the appellee filed with the State Tax Commissioner of Maryland a report as to its capital stock in which it stated that all of said stock, consisting of 1,000 shares, was, "on the first day of January, 1905," owned "by Scott & Co., of Wilmington, Delaware." On the same day, as the result of correspondence between the appellee company and the Appeal Tax Court of Baltimore City, the appellee made to said Appeal Tax Court a report which set forth that its entire capital stock was owned by the Maryland, Delaware and Virginia Railway Company whose principal office was in Queen Anne's County; that its capital stock consisted of 1,000 shares of the par value of $100; that this stock was acquired by the railway company aforesaid on the 1st of February, 1905; that the said Maryland, Delaware and Virginia Railway Company was a corporation organized under the laws of the States of Maryland and Delaware; that

"on the 1st day of January, 1905, the entire capital stock" of the appellee "was held by Scott & Company of Wilmington, Delaware," and that the ownership of the said stock had been returned to the County Commissioners of Queen Anne's County "for the purposes of assessment and taxation for the year 1905."

In the correspondence, which resulted in this report being made, it was claimed on behalf of the Appeal Tax Court of Baltimore City that the stock of the appellee was liable for assessment and taxation for the year 1905 for municipal purposes in said city. The appellee, on the other hand, claimed that the stock was so liable to be taxed in Queen Anne's County; and its said report gave notice to the appellant that any attempt by the authorities of the city of Baltimore to assess the said stock for taxation in the said city would be resisted. Pending the controversy thus raised the payment of the taxes in question for the year 1905 has been suspended and the same have not been paid either to the city of Baltimore or to Queen Anne's County.

On the 24th of March, 1905, the State Tax Commissioner certified to the Appeal Tax Court of Baltimore City the taxable value of the stock in question, as ascertained and determined by him, to be $72.06 per share making the assessment of the 1,000 shares equal to $72,060. On April 27th, 1905, the said stock was assessed according to said valuation by the Appeal Tax Court of Baltimore for taxation for municipal purposes against Scott & Company at the rare of $2.11½ on the $100 making the aggregate tax upon said stock $1,524.07 which was charged against the appellee. On the same day a bill for the taxes so assessed for 1905 for city purposes was rendered to the appellees; and in the agreed statement of facts it appears that it was "agreed that the advertisements prescribed by sec. 51 of the Baltimore City Charter were duly given."

This suit was instituted in the Baltimore City Court on the 1st day of August, 1905. The action is in *assumpsit* and the *nar.* contains the common counts and a special count setting out the facts upon which the appellant bases the liability of

the apppellee which are substantially those that have been set out in the recital of facts made, with the allegation in addition to these, that no appeal was taken from the valuation made of the stock in question by the State Tax Commissioner and that said valuation thereby became final.    As also that by ordinance of the appellant approved on the 14th December, 1904, a tax of $2.11½ was duly levied on every one hundred dollars' worth of assessable property in the city of Baltimore for municipal purposes for the year 1905.    The appellee pleaded the general issue pleas, never indebted, and never promised. The agreed statement of facts authorized the Court to enter judgment for the plaintiff or for the defendant according to its opinion upon the said facts.    The Court entered judgment for the defendant (appellee here) and from such judgment the present appeal was taken.

The provisions of our law with reference to the imposition of taxes upon the shares of stock of corporations require that such shares, when held by residents of the State, shall be valued for taxation to the owners thereof, for county or municipal purposes, in the county or city in this State in which such owners reside; and when held by non-residents of the State shall be so valued to the owners in the county or city in which the corporation is situated, Art. 81, sec. 159, Code 1904, *Skinner Dry Dock Co.* v. *Balto. City*, 96 Md. 32; *Corry* v. *Balto. City*, 96 Md. 310.    It has been seen that the question to be determined here is, where is the stock involved in this controversy properly assessable for taxation for local purposes for the year 1905?    It is clamed on behalf of the appellant that it was so assessable in the city of Baltimore; and that this is so from the fact that on the first day of January, 1905, this stock was owned by non-residents.    With this contention we agree.

It is now provided by Act of 1902, ch. 417 (sec. 150, Art. 81, Code 1904) that by the 15th day of March in each year the president, cashier or other chief officer of every incorporated institution, located and doing business in this State shall "report to the State Tax Commissioner a true and correct

statement of the number of shares of capital stock" in such incorporation, "and the par value of each share with such information in regard to the value of the same as may be required by the said commissioner, and may be in possession of such officer as of the 1st day of January of each year, and the commissioner shall annually by the 15th day of May in each year assess the said shares as hereinafter provided as of the 1st day of January next preceding and levy the State taxes prescribed by law upon the same." Section 156 of the same Article of the Code (Act 1902, ch. 468) provides that the president or other proper officer of the corporation "shall annually on or before the first day of March, furnish to the County Commissioners of each county or the Appeal Tax Court of Baltimore City and the City Clerk of each city, town or village incorporated in the State of Maryland in which any of its stockholders may reside, a list of the said stockholders, so far as their place of residence may be known to such officer together with the number of shares held by each." It is then further provided that such officer of the corporation "shall annually on or before the first day of March make out and deliver to the County Commissioners of the county or Appeal Tax Court or City Clerk of the municipal corporation where said corporation is situate an account of the number of shares of stock in such corporation held by persons not residents of this State, and the same shall be valued at its actual cash value to, and in the name of such stockholders respectively; but the tax assessed on such stock shall be levied and collected from said corporation, and may be charged to the account of such non-resident stockholders in the said corporation and shall be a lien on the stocks therein held by such stockholders respectively until paid; and in no case shall the stock of any corporation, in the aggregate be valued at less than the full value of the real estate and chattels, real and personal, held by or belonging to such corporation in the several counties and city of Baltimore, whether shares of said stock are quoted on the market or not."

Sec. 159 of the same Article of the Code provides that, at

the time of making the report provided for and required in
sec. 156, the officer making the same "shall furnish to the
County Commissioners of each county" in which the corpor-
ation, of which he is such officer, owns "any real property
and to the Appeal Tax Court of Baltimore City" if such cor-
poration "shall own and possess any real property in said city,
and such real property shall be valued and assessed by said
County Commissioners and Appeal Tax Court respectively"
to the corporation owning the same, "and the said County
Commissioners and Appeal Tax Court shall give duplicate
certificates of such valuation and assessment" to the said offi-
cer "who shall transmit one of such duplicate certificates with
his return to the State Tax Commissioner, and State, county
and city taxes shall be levied upon and paid by such" corpor-
ation "on such assessment in the same manner as the same
are levied upon and paid by individual owners of real property
in such county or city." There is then prescribed in this
same section how the valuation and assessment of the shares
of stock of the corporation are to be made by the State Tax
Commissioner: "He shall deduct the assessed value of such
real property belonging to" the corporation "from the aggre-
gate value of all shares of such" corporation "and divide the
remainder by the number of shares of the capital stock or
shares" of the corporation "and the quotient shall be the tax-
able value of each of such respective shares for State pur-
poses, and all State taxes thereon shall be paid as provided
now or hereafter by law." The State Tax Commissioner is
then required to "certify to the County Commissioners of
each county where any of the stockholders or shareholders
may reside and to the Appeal Tax Court of Baltimore City, if
any of said stockholders or shareholders reside in said city,
and to the County Commissioners of the county in which "the
corporation" is situated or to the Appeal Tax Court of Balti-
more City if it is situated in said city, the assessed taxable
value of such respective shares of stocks, or shares so ascer-
tained as aforesaid." It is then provided that all of such
stock as is owned by residents of this State shall, for county

and municipal purposes, be valued to the owners thereof in
the county or city in which such owners reside; and such as
is owned by non-residents shall be valued to the owners thereof
in the county or city in which the corporation is situated, but
that all county and municipal taxes thereon shall be collected
from the corporation which shall or may charge the taxes paid
by it to the account of the stockholders to whom the shares of
stock are so valued.

Prior to the Act of 1902, ch. 417 (now sec. 150, Art. 81,
Code 1904), there was no precise and definitely fixed time
with reference to which shares of stock of corporations, liable
to taxation, were to be valued and assessed by the State Tax
Commissioner for that purpose:    Under the law as it stood in
the Code of 1888, Art. 81, sec. 133 (Act of 1878, ch. 178),
it was provided that the president, cashier, or other chief offi-
cer of the corporation, the shares of which were subject to
taxation, should, by the 15th of April in each year, report to
the State Tax Commissioner a statement of the number of
shares of capital stock of such corporation and the par value
of each share with such information in regard to the value of
the same as might be required by said commissioner; and that
the said commissioner should annually, by the 15th of May,
in each year assess the said shares as in subsequent provisions
of the Article was prescribed, and levy the State taxes upon
the same.    But no time was specified, as of which the valua-
tion and assessment of the shares were to be made by the Tax
Commissioner save only that this was to be done by the 15th
May, and upon the report to be made to him from the corpor-
ation by the 15th of April.    The corporations were thus left
to select their own time, subject to having their reports to the
Tax Commissioner sent in by the prescribed date, for having
the shares of stock valued and assessed.    This was found to
expose the law to abuse and to afford facilities for evading the
provisions for the imposition of taxes upon stocks.    To remedy
and prevent this, and to give more system to the administra-
tion of the law in respect to the assessment of these taxes,
the Act of 1902, ch. 417 (Art. 81, sec. 150, Code 1904), was

enacted whereby it is provided that the Tax Commissioner "shall annually by the fifteenth day of May in each year assess the said shares (of stock) as hereinafter provided as of the first day of January next preceding, and levy the State taxes prescribed by law upon the same." It seems plain enough that this provision fixes the time for the assessment and levy of State taxes. County and municipal taxes are within the reason of the law and the reason applies to these with the more force since they are the larger and more burdensome part of taxation under our system. It is not to be supposed therefore that these last-mentioned taxes were not intended to be embraced within the operation of a law having the object which has been indicated.

The proper effect to be given to the three sections, 150, 156 and 159 of Art. 81 of the Code, reading them together, would seem to be this. First by the provisions of sec. 150, the proper officer of the corporation is, for the purpose of having the shares of stock of the corporation valued and assessed for taxation, to make the report required by said section as of the first of January preceding; and, though not in terms so prescribed, as the Tax Commissioner is required, after so valuing the stock, to certify such valuation to the local authorities of the counties, or of Baltimore City, according to the residence of the stockholders, or in case of the stock being held by non-residents, to the county or city in which the corporation is situated, it is the duty of the officer of the corporation in making the report required of him to furnish to the Tax Commissioner with the "statement of the number of shares of capital stock," a list of the stockholders and their places of residence. This must of necessity be so because without the information as to the stockholders and their residence the Tax Commissioner could not perform the duty required of him by sec. 159, of certifying to the proper local authorities "the assessed taxable value of such respective shares of stock or shares so ascertained" by him; and the only medium for conveying to him information in respect to the stocks that are to be valued and assessed is that provided in sec. 150.

The reasonable intendment is that the information so to be conveyed to the Tax Commissioner is to be sufficient to enable him to perform the duty required of him by the related sections.    Imputing an intendment of this nature has support in the cases of *The Mayor & C. C. of Balt.* v. *The Baltimore City Pass. Ry. Co.*, 57 Md. 31, and *The Amer. Coal Co.* v. *The Co. Commissioners of Allegany Co.*, 59 Md. 185, in the construction given by them to the Act of 1878, ch. 178.    That Act provided that the Tax Commissioner after valuing the shares of stock of corporations as therein required should certify the valuation made by him to the County Commissioners of counties in which the holders of the stock resided and to the Appeal Tax Court of Baltimore City if any of such holders resided in Baltimore City; but it did not, in terms, provide for his certifying as to stock held by non-residents to the authorities of the county or city, as the case might be, in which the corporation was situated.    It was held in the cases referred to that notwithstanding this, "inasmuch as the shares of stock owned by non-residents of the State are given a fixed *situs* by law, and are equally liable to taxation as the shares owned by residents of the State," it was "within the reason and purview of the statute that the Tax Commissioner should not only certify the number and value of shares owned by residents, but should likewise certify to the county or city authorities where the corporations are situated * * * the number and value of the shares owned by non-residents of the State, for purposes of local taxation."

Upon the information to be conveyed to the Tax Commissioner under the provisions of secs. 150 and 159, he is to assess and value for taxation the stocks that are reported to him as therein provided.    By section 150 he is to make this valuation as of the first of January preceding, and by section 159 he is to certify to the local authorities the valuation that he makes of the stocks.    As the only information he has, or can have, in an authentic way, as to the value and ownership of the stocks which he is so to value and certify, is as of the first of January preceding, his certificate to the local authorities

must necessarily have reference to that date. This is illustrated in the case at bar. Here the proper officer of the appellee made the required report to the Tax Commissioner of the shares of stock of the corporation and of the ownership of the same as of the first of January, 1905. The stock was valued by him in the manner prescribed. It then being·his duty to certify this valuation to the proper local authorities for taxation of the stock for local purposes he, of necessity, so certified to the Appeal Tax Court of Baltimore City, because the *situs* of the corporation was in Baltimore City and the only information that was before him as to the ownership of the stock·was that, on the first of January preceding, the same was owned by non-residents. This would seem to be the logical result of the operation of the provisions of secs. 150 and 159. This being so, in reading section 156, which provides for a report by the proper officer of the corporation, before the first day of March in each year, to the County Commissioners of each county in which any of its stockholders may reside a list of the said stockholders and their places of residence together with the number of shares held by each, the reasonable intendment to be given to it is, as the appellant here contends, that it is to be read in harmony with secs. 150 and 159; and as if there was repeated in sec. 156 that the report therein required to be made of the stockholders and their residence was to be made as of the first of January preceding. This is obviously necessary to give system to the law in reference to the taxation of shares of stock of corporations and to rescue it from contradiction and confusion in its practical operation.

It follows from what has been said that the shares of stock here in question were properly taxable for the year 1905 in the city of Baltimore and that the prayer of the defendant which affirmed the contrary upon the hypothesis of fact therein set out was improperly granted. While this is so the prayers of the plaintiff (appellant here) were properly rejected and the judgment was properly entered for the defendant upon the facts as they existed at the time of the trial, and as they appear in the record, under the authority given, in the

agreed statement of facts, to the Court to enter judgment according to its opinion upon these facts subject to the right of appeal. The first of the plaintiff's prayers asserted the right of the plaintiff to recover the taxes sued for upon the facts therein set out; the second, the right to recover interest on said taxes from May 1st, 1905; and the third, the right to recover the penalty of 3 per cent upon the amount of said taxes under the provisions of sec. 51 of the Baltimore City Charter. These prayers seem to treat the stocks here in question as a part of the basis of taxation in the city of Baltimore on the 1st of October, 1904, upon which the ordinance of estimates for that year was made up; and to have been embraced in the levy under said ordinance making the taxes levied thereon subject to the provisions of secs. 40 and 51 of the Charter of Baltimore City. This is obviously untenable.

The taxes upon the stocks here in question were assessed and levied under the provisions of Art. 81 of the Code to which reference has been made herein. Sec. 70 of that Article provides that "taxes shall be considered in arrear on the first day of January next succeeding the date of their levy and shall bear interest from that date." The taxes here sued for therefore were not due and enforceable, according to repeated decisions of this Court, until the first day of January, 1906. *Wheeler* v. *Addison*, 54 Md. 41; *Condon* v. *Maynard*, 71 Md. 601; *State* v. *Safe Dep. and Trust Co.*, 86 Md. 581. In *Condon* v. *Maynard*, *supra* (p. 605), it is said: "The taxes must necessarily be due before payment can be enforced." A reference to section 40 of the Charter of Baltimore City will show that it, in terms, relates only to the annual levy of taxes in the said city upon the basis of taxation which it is provided shall be furnished to the Board of Estimates as of the 1st of October of each year. This suit having been brought in August, 1905, for taxes levied for that year under the provisions of Art. 81 of the Code was prematurely brought and there was therefore no error in the action of the Court in giving judgment for the defendant (appellee). The judgment must therefore be affirmed without prejudice.

*Judgment affirmed with costs to the appellee without prejudice.*
(Decided April 20th, 1906.)